351 S.E.2d 412

**STATE of West Virginia ex rel. Johnie OWENS**

v.

**Charlie BROWN, Attorney General for the State of West Virginia, J. Bradley Russell, Assistant Attorney General for the State of West Virginia and Mingo County Special Prosecutor, and the Honorable Dan O'Hanlon, Judge of the Sixth Judicial Circuit of West Virginia with a Temporary Special Assignment to the Thirtieth Judicial Circuit, West Virginia.**

**No. 17409.**

Supreme Court of Appeals of West Virginia.

Dec. 9, 1986.

---

the trial judge was satisfied that it would be impossible to get a fair and impartial jury panel drawn from those eligible to serve in Mingo County. Over the petitioner's objection that an attempt should be made to find an impartial Mingo County jury, the trial judge ruled that a jury panel from Cabell County would be summoned for the petitioner's trial.

Guy R. Bucci, J. Michael Ranson, Charleston, for appellant.

J. Bradley Russell, Asst. Atty. Gen., for appellees.

McGRAW, Justice:

This is an original proceeding in which the petitioner, Johnie Owens, seeks a writ prohibiting the respondents from trying him in Mingo County before a jury summoned from Cabell County. The petitioner asserts that the decision of the circuit judge to summon jurors from another county was contrary to the rule noted in *State ex rel. Cosner v. See*, 129 W.Va. 722, 42 S.E.2d 31 (1947). We agree and award a writ to prohibit the respondents from proceeding further with the trial of the petitioner before a jury summoned from any county other than Mingo County until it appears from clear and convincing evidence on the record that a legally qualified, fair, and impartial jury cannot be obtained from Mingo County.

The petitioner was indicted by a Mingo County special grand jury in August 1986. At a pretrial hearing, the State moved pursuant to West Virginia Code § 52-1-14 (Supp.1986)[1] to bring in a jury from another county for the petitioner's trial. The special prosecuting attorney entered onto the record copies of numerous newspaper articles which demonstrated the pervasive nature of the pretrial publicity surrounding this case. From this showing and from his own knowledge of the various controversies in which the petitioner was involved,

I.

At common law, the rule was that the members of the jury must have been drawn from the vicinage, or neighborhood, where the crime occurred. 47 Am.Jur.2d *Jury* § 25 (1969). That right, while generally preserved under the current constitutional and statutory system, W.Va. Const. art. III, § 14; W.Va.Code § 2-1-1 (1979 Replacement Vol.), is subject to the requirement of a fair and impartial trial, *Cosner*, 129 W.Va. at 742-43, 42 S.E.2d at 43. While we are not here addressing the issue in a constitutional dimension, statutory language essentially the same as current section 52-1-14 was not found violative of any provision of the Constitution of West Virginia in *Cosner*, so long as the statute is construed to require trial by a jury of the county in which the crime occurred unless it clearly appears that a qualified jury cannot be found in that county. *Cosner*, 129 W.Va. at 734, 42 S.E.2d at 33.

This construction was reaffirmed in Syllabus Point 1, *State v. Bail*, 140 W.Va. 680, 88 S.E.2d 634 (1955), in which we held, "[a] defendant in a criminal case can not be deprived of a trial by a jury composed of jurors of the county wherein he stands charged, except upon a clear showing that a fair and impartial jury can not be obtained from that county." In that case, we went on to declare that "[a] finding by a trial court in a criminal case that a fair and impartial jury can not be obtained in the county wherein defendant stands charged, must be clearly supported by facts appear-

---

**1.** The relevant portion of § 52-1-14 provides: In any criminal case in any court, if in the opinion of the court, or the judge thereof in vacation, qualified jurors, not exempt from serving, cannot be conveniently found in the county in which the trial is to be, the court, or the judge thereof in vacation, shall enter an order of record to such effect and may cause so many jurors as may be necessary to be summoned from any other county.

ing in the record." Syl. Pt. 2, *Bail*, 140 W.Va. 680, 88 S.E.2d 634.

In the *Cosner* case, the trial court summoned three local venires of one hundred and twenty-eight persons. Of that number ninety-six appeared for examination and nineteen were seated on the jury panel before the out of county venire was summoned. In the *Bail* case, the trial judge did not examine any potential local jurors, but instead based his decision to summon a jury from another county on the difficulties experienced in finding an impartial jury for two previous, companion trials. The entire venire had been exhausted in one of the previous cases without obtaining a qualified jury. In the other case, there was substantial difficulty in empaneling a jury and the trial ended with a "hung jury." This Court ruled in both the *Cosner* and *Bail* cases that there was not an adequate showing to justify resort to the statutory vehicle of summoning an out of county jury.

■ When compared to these leading cases, it is obvious that, in the instant case, the decision to bring in a jury from outside of Mingo county was not "clearly supported by facts appearing in the record." Syl. Pt. 2, *Bail*, 140 W.Va. 680, 88 S.E.2d 634.

## II.

The respondent argues that, as a matter of policy, a change of venire should be at least as easy to obtain as the "more intrusive" mechanism for assuring a fair and impartial trial, a change of venue.[2] The respondent contends that the law has changed since the *Cosner* and *Bail* decisions and the statutory construction of those cases is unduly restrictive.

First, the respondent evokes "modern concepts of due process," claiming that a court must take affirmative action to insure a fair trial. The difficulty with this contention is that, in the single case cited by the respondent and in the others we reviewed, the affirmative duty of trial court to ensure a fair trial runs primarily to the benefit of the defendant. The United States Supreme Court has held that "*the trial courts must take strong measures to ensure that the balance is never weighed against the accused.*" *Nebraska Press Association v. Stuart*, 427 U.S. 539, 553, 96 S.Ct. 2791, 2800, 49 L.Ed.2d 683, 694 (1976) (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 362, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600, 620 (1966)) (emphasis in *Nebraska Press*).

The respondent next disparages the common law right to be judged by a jury drawn from the vicinage where the crime occurred. Specifically, the respondent attacks as outdated this Court's observation in *State v. Woods*, 92 W.Va. 331, 338, 115 S.E. 470, 472 (1922), that "[i]f he [the defendant] has lived a good life he is entitled to be tried by jurors who know that fact and not to be dragged from home to be tried among strangers." The respondent may find this concept old-fashioned, but the fact remains that many states retain constitutional provisions calling for juries to be summoned from the area in which crimes are committed. Ala. Const. art. I, § 6; Ariz. Const. art. II, § 24; Ark. Const. art. II, § 10; Fla. Const. art. I, § 16; Haw. Const. art. I, § 14; Ill. Const. art. I, § 8; Kans.B.R. 10; Ky.B.R. 11; Me. Const. art. I, § 6; Minn. Const. art. I, § 6; Miss. Const. art. III, § 26; Mo. Const. art. I, § 18(a); Mont. Const. art. II, § 24; Neb. Const. art. I, § 11; N.M. Const. art. II, § 14; Ohio Const. art. I, § 10; Okla. Const. art. II, § 20; Or. Const. art. I, § 11; Pa. Const. art. I, § 9; S.D. Const. art. VI, § 7; Tenn. Const. art. I, § 9; Utah Const. art. I, § 12; Va. Const. art. I, § 8; Wash. Const. art. I, § 22; Wis. Const. art. I, § 7; Wyo. Const. art. I, § 10. We are unpersuaded by the respondent's argument and agree with the Supreme Court of South Carolina that "the ends of justice are served by having the credibility of the witnesses passed upon by jurors of the vicinage." *Turner v. Santee Cement Carriers, Inc.*, 277 S.C. 91, 95, 282 S.E.2d 858, 860 (1981).

---

**2.** The State points out that instead of simply bringing in an outside jury, a change of venue inconveniences witnesses, parties, and counsel as well as adding to the costliness of a trial.

### III.

Both parties rely on cases relating to the standard for a change of venue, analogizing that procedure to the one involved in the instant case. It is true that bringing in a jury from another county may accomplish some of the purposes served by a change of venue. The problem with the analogy, however, is that it ignores the fact that, in West Virginia, only a defendant may move for a change of venue, Syl. Pt. 2, *State v. McFarland*, 175 W.Va. 205, 332 S.E.2d 217 (1985), while summoning jurors from another county may be initiated by the defendant, the State, or the trial court, *Bail*, 140 W.Va. at 694, 88 S.E.2d at 644.

 When a defendant requests a jury from another county, he must make a showing of good cause, and this Court will review the trial court's ruling on such a motion under the abuse of discretion standard. *See* Syl. Pt. 3, *State v. Clements*, 175 W.Va. 463, 334 S.E.2d 600, *cert. denied*, 474 U.S. 857, 106 S.Ct. 165, 88 L.Ed.2d 137 (1985). Insofar, however, as West Virginia Code section 52–1–14 allows such a change to be proposed by the State or by the trial court, it is in derogation of a defendant's general common law rights and it must be narrowly construed so that summoning a jury from another county is allowed only when there has been a clear and convincing showing on the record that it is necessary in order to obtain a fair and impartial trial. *See Cosner*, 129 W.Va. at 742–43, 42 S.E.2d at 43; *see also Beckwith v. State*, 386 So.2d 836 (Fla.Dist.Ct.App. 1980); *Newberry v. Commonwealth*, 192 Va. 819, 66 S.E.2d 841 (1951). Before a trial court may summon a jury from another county over the defendant's objection, it must make a thorough effort to impanel a local jury, and the additional facts upon which it bases its decision must appear on the record, rather than being peculiarly within the court's personal knowledge. *See Bail*, 140 W.Va. at 693, 696–97, 88 S.E.2d at 643, 645. These requirements ensure that meaningful review of the trial court's action will be available to the defendant. *Id.*

 Because the judge below relied on his own personal knowledge and upon a showing of widespread publicity without a separate showing of a present hostile sentiment against either party, *see* Syl. Pt. 2, *State v. Zaccagnini*, 172 W.Va. 491, 308 S.E.2d 131 (1983), and because the trial court made no effort to impanel a jury, meaningful review of the decision to summon a jury from Cabell County would be impossible. "Unless it clearly appears that a qualified jury can not be obtained, ... the court in which the prosecution is pending exceeds its legitimate powers under the statute ... in causing jurors to be summoned from another county for the trial of the defendant." Syl. Pt. 4, *Cosner*, 129 W.Va. 722, 42 S.E.2d 31. Therefore, the petitioner is granted a writ prohibiting the respondents from proceeding further with the trial of the petitioner before a jury summoned from any county other than Mingo County until it appears from clear and convincing evidence on the record that a legally qualified, fair, and impartial jury can not be obtained from Mingo County.

Writ granted.